## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Hubert Alan Jason, II, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv274 (AJT/IDD) |
| | ) | |
| Mr. Call, et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Virginia inmate Hubert Jason initiated this pro se civil rights action pursuant to 42 U.S.C.

§ 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In his

complaint, plaintiff alleges that defendants Lt. Williams and Officer McDaniels (collectively

"defendants") denied him certain items of religious property while he was held in the Special

Housing Unit of Nottoway Correctional Center. See Dkt. Nos. 1, 10. Defendants have filed a

motion for partial summary judgment, in which they argue that one of plaintiff's claims is moot

and the others fail, at least in part, as a matter of law. See Dkt. Nos. 23-24. Plaintiff received the

notice required by Local Rule 7(K) and an opportunity to file responsive materials pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 25] and opposes defendants'

motion. See Dkt. No. 27. For the reasons explained below, defendants' motion shall be granted

in part and denied in part.

### I. Background

In his complaint, plaintiff alleges that defendants improperly deprived him of several

items of religious property between the dates of November 25, 2017 and December 10, 2017.

The factual record at summary judgment establishes the following.[1]  Where disputes of fact exist, they are explained in footnotes.

1. Between November 25, 2017 and December 10, 2017, plaintiff was removed from general population for "not clearing the cellphone tower coming out of visitation."[2]

2. Pursuant to Virginia Department of Corrections ("VDOC") Operating Procedure ("O.P.") 802.1, entitled "Offender Property," plaintiff's property was inventoried upon his removal.  Plaintiff signed a paper acknowledging the results of the inventory process.

3. The inventory sheet reflected that plaintiff then possessed:

   - Eraser (1)
   - Assorted mail (1)
   - Books (7)
   - Jacket (1)
   - Cap (2)
   - Gym shorts (1)
   - Jeans (1)
   - Long underwear set (2)
   - Shirts (1)
   - Shower shoes (1)
   - Sweatband (1)
   - Sweatpants (1)
   - Personal shoes (1)
   - Undershirts (2)
   - AM/FM Radio (1)
   - JP4 device / cassette / CD player (1)
   - Batteries (2)

---

[1] The facts set out in this section derive from the sworn affidavit of A. Walton, Property Supervisor at Nottoway Correctional Center [Dkt. No. 24-1 ("Walton Aff.")], Virginia Department of Corrections Operating Procedure 802.1 and Institutional Property Matrix [Walton Aff., Enc. B], Plaintiff's Inventory Sheet [Walton Aff., Enc. B], Institutional Classification Authority Hearing Notification Form [Dkt. No. 27-3], and Offender Request [Dkt. No. 27-5]. The facts are not presented in the order presented by defendants but have been rearranged for the sake of clarity.

[2] Defendants assert that plaintiff was in "disciplinary segregation" during this period of time. See Walton Aff. ¶ 6.  Plaintiff contests this characterization and argues that he was placed not on disciplinary segregation, but on "general detention" status. See Dkt. No. 27.  To support his position, plaintiff cites to an "Institutional Classification Authority Hearing Notification Form" which states as much. See Dkt. No. 27-3.  The fact as presented above reflects the dispute between the parties with respect to the specific disciplinary status plaintiff was assigned for the relevant dates.

- Fan (1)
- Headphones / earbuds (3)
- TV (1)
- Surge Protector (1)
- Headphone extension (1)
- Coax cable (1)
- Plastic comb (2)
- Hairbrush (1)
- Soap dish (1)
- Toothbrush (1)
- Toothbrush case (1)
- Ear swabs (1)
- Toothpaste (1)
- Sunglasses (2)
- Watch (1)
- Eyeglasses (3)
- Hydrocortisone (1)
- Insoles (1)
- Bowl (1)
- Drinking cup (1)
- Mirror (1)
- Set of playing cards (1)
- Consumable commissary goods (19)
- Blue prayer rug (1)
- Prayer oil (2)
- Pencils (1)
- Pens (4)
- Shower oil (1)
- Shampoo (1)
- Hand sanitizer (1)
- Antifungal cream (1)
- A&D ointment (2)
- Analgesic cream (1)
- Deodorant (1)
- Face bream (1)
- Petroleum jelly (1)

Walton Aff. ¶ 4.

4. VDOC O.P. 802.1 states that "any claim by the offender of missing or damaged property should be made at [the time of the inventory process] by written notation on the inventory report."

5. When his property was inventoried, plaintiff did not note any missing or damaged items; however, plaintiff did state: "I did not agree to not receive items authorized to me under the O.P. 802.1."

6. Regardless of housing or disciplinary status, O.P. 802.1 allows inmates to retain certain property. An "Institutional Property Matrix" accompanies O.P. 802.1. That property matrix delineates the property an offender may retain while holding different disciplinary classifications or security levels. The amount of property an inmate may retain is greatly diminished for inmates placed in disciplinary segregation and much broader with respect to other detention statuses.[3]

7. The property matrix shows that, generally, a religious text or holy book is counted among the total books an offender may possess. When an offender is in disciplinary segregation, however, the offender may possess *only one* religious text or holy book and may not possess any other books. Accordingly, any religious text or holy book in the offender's possession at the time he enters disciplinary segregation is inventoried as a religious text or holy book; it is not considered a normal "book" counted alongside the inmate's other reading materials.[4]

8. Pursuant to O.P. 802.1, an inmate in general detention status is entitled to retain at least a "pen, paper, legal materials, Bible, Qur'an, Religious books of explanation, Kufi, prayer rug, prayer oil, radio, JP5 tablet, headphones, soap, deodorant, toothpaste, toothbrush, etc."[5]

---

[3] Defendants state that the property matrix "lists the property male offenders are allowed to possess at Security Level 1, 2, and 3 institutions, as well as, Restrictive Housing and Disciplinary Segregation." See Walton Aff. ¶ 5. Defendants, however, have attached two matrices to their motion, and their offered description does not apply to both, and contrary to defendants' description, one of the attached matrices lists Security Levels 1-5 and includes "Special Housing," "Disciplinary Segregation," and "Jail Intake" as categories. See Enc. A, p. 18. These categories carry significance—they dictate the specific property an offender is entitled to retain while housed in the relevant category. Therefore because one of the attached matrices contains detention statuses different than those listed in defendants' proposed undisputed fact, the fact as listed above has been edited to reflect this inconsistency.

[4] Plaintiff takes issue with this fact as presented by defendants, arguing that he was not in "disciplinary segregation" for the dates in question. Because, though, this fact is a general assertion not specific to plaintiff, and because plaintiff does not dispute the accuracy of the statement in the abstract, it is listed here in the form offered by defendants.

[5] Defendants assert that, because plaintiff was placed in disciplinary segregation, the only property he could have retained following the inventory process was a prayer rug and prayer oil. Walton Aff., Enc. B. Plaintiff again takes issue with defendants' characterization that he was assigned to disciplinary segregation and suggests that, because he was not, he was entitled to possess much more property. See Dkt. No. 27.

4

9. Plaintiff practices his religion "daily by reading [his] Qur'an, Books of explanation, praying at least five times a day on [his] prayer rug, wearing [his] Kufi, using [his] prayer oil . . . ." and could not do so without these items.

10. On December 12, 2017, plaintiff signed for the receipt of his property. At that time, he did not attest that any property was missing or damaged. As such, plaintiff certified that the he "received all items of [his] personal property as indicated on [the inventory] form."

11. That form did not explicitly state that plaintiff possessed a Qur'an, Books of Explanation, or Kufi.[6]

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

---

[6] Plaintiff again argues that he was not placed in disciplinary segregation, so defendant McDaniels "counted [plaintiff's] Quran and Books of religious explanations ... with other books" as permitted in the property matrix for prisoners not held in segregation. See Dkt. No. 27. Plaintiff also provides documentation which shows that he possessed a kufi in June 2017. See Dkt. No. 27-5. But these points do not contradict defendants' assertion that the inventory sheet does not reflect that plaintiff was in possession of these items when removed from general population. Accordingly, the fact is presented in the form offered by defendants.

In his complaint, plaintiff argues that the defendants' failure between November 25, 2017 and December 10, 2017 to allow him to retain his "approved religious items ... deprived [him] of the right to practice [his] sincerely held beliefs ... in violation of the First Amendment, Fourteenth Amendment of the United States Constitution, and RLUIPA." See Dkt. No. 10, p. 8. Defendants construe plaintiff's complaint as stating four claims:

1. Defendants McDaniels and Williams violated plaintiff's First Amendment rights by withholding religious property while plaintiff was in restrictive housing.

2. Defendants McDaniels and Williams violated plaintiff's Eighth Amendment rights by withholding religious property while plaintiff was in restrictive housing.

3. Defendants McDaniels and Williams violated plaintiff's rights under the Religious Land Use and Institutionalized Persons Act by withholding religious property while plaintiff was in restrictive housing.

4. Defendants McDaniels and Williams violated plaintiff's rights under the Due Process Clause by withholding property while plaintiff was in restrictive housing.

Dkt. No. 24, pp. 1-2. Plaintiff does not challenge defendants' construction of his claims. See Dkt. No. 27. Because defendants' construction represents a fair and appropriately deferential characterization of plaintiff's complaint, the Court relies on these claims in analyzing the motion for summary judgment.

Before analyzing the specific claims, however, the existence of a central dispute of fact bears brief discussion. At issue is the specific disciplinary status plaintiff held between the dates of November 25, 2017 and December 10, 2017. Defendants contend that plaintiff was "in disciplinary segregation" during this time. See Walton Aff. ¶ 6. Plaintiff, meanwhile, asserts that he was in the "Restrictive Housing Unit under the status of General Detention" for the period in question. Dkt. No. 37.

This dispute is material. Pursuant to the then-operative version of VDOC O.P. 802.1, an inmate's disciplinary status determined the property he was entitled to retain or possess at any given time. See Walton Aff. ¶ 5 ("OP 802.1_F1, Institutional Property Matrix, lists the property male offenders are allowed to possess at Security Level 1, 2, and 3 institutions, as well as, Restrictive Housing and Disciplinary Segregation."). Operating Procedure 802.1, however, does not clearly define "Disciplinary Segregation" or "Restrictive Housing" and defines "Special Housing" only as "[a] general term for special purpose bed assignments including segregation, disciplinary segregation, general detention, and pre-hearing detention." Id. at p. 2.

Under O.P. 802.1's loose definitions, plaintiff makes a legitimate case that he was rightly classified into the Special or Restrictive Housing category and was not, as defendants contend, placed in Disciplinary Segregation. Indeed, plaintiff has introduced a record which states that, on November 25, 2017, he was "[p]laced on General Detention Per Warden D. Call for not Clearing the Cellphone Tower coming out of Visitation." See Dkt. No. 27, Ex. 3. Because "general detention" falls under O.P. 802.1's definition of "Special Housing," and is listed separately from "disciplinary segregation," which also falls under that definition, this evidence is sufficient to raise a factual dispute with respect to plaintiff's detention status during the relevant period. Consequently, it is unclear what specific property plaintiff was entitled to retain at that time. With this foundation in mind, defendants' motion for summary judgment is assessed below.

A.    *Claim One – First Amendment Free Exercise Clause*

With respect to plaintiff's Free Exercise claim, defendants do not argue that they are entitled to summary judgment. Instead, defendants seek to limit the scope of plaintiff's claim, asserting that, although plaintiff may have been deprived of certain pieces of his property, he was

entitled to retain only some of those items and never possessed others in the first place. See Dkt. No. 24, p. 7. Specifically, defendants claim that the record fails to demonstrate that plaintiff was ever in possession of a Qur'an, books of explanation, or kufi and therefore, defendants could not have deprived plaintiff of the same. They further argue that, by virtue of his status in disciplinary segregation, the only items plaintiff initially possessed and had a right to retain were a comb, two pairs of prescription eyeglasses, a blue prayer rug, and a bottle of prayer oil. They therefore request that the scope of Claim One be limited to these items moving forward. See Dkt. No. 24, p. 7.

As discussed, defendants have failed to conclusively establish that plaintiff *was* in disciplinary segregation during the dates in question. Accordingly, the inventory sheet which showed that plaintiff possessed seven books at the time of the inventory does not necessarily demonstrate, as defendants assert, that plaintiff was not in possession of a Qur'an or holy books of explanation. See Walton Aff., Encs. A, B. In other words, it is equally feasible that plaintiff was in general detention status instead of disciplinary segregation, and defendants classified plaintiff's religious books as regular books, as allowed under O.P. 802.1. See id., Enc. B ("Religious Text or holy book – *Counted with other books except Disciplinary Segregation*"). Consequently, at this juncture, plaintiff's First Amendment claim cannot exclude the potential denial of plaintiff's Qur'an or books of explanation.

That said, Defendants are correct that the factual record does not allow for an inference that plaintiff was denied a kufi during the dates in question. Although plaintiff has submitted evidence showing that he possessed a kufi in June 2017, see Dkt. No. 27-5, that evidence does not demonstrate that plaintiff had a kufi during the relevant period. Indeed, Plaintiff's inventory sheet does not show that plaintiff possessed a kufi when he was removed from general

8

population. See id. Therefore, based the record before the Court, the Court narrows Claim One with respect to the alleged denial of plaintiff's kufi.

On summary judgment, the Court must view the facts in the light most favorable to the nonmovant, here the plaintiff. Viewing the record as so, defendants' request to limit the scope of Claim One must be granted in part and denied in part. While the record allows for an inference that plaintiff possessed and was denied a Qur'an or other religious books of explanation between the dates of November 25, 2017 and December 10, 2017, the record does not allow for a similar inference with respect to plaintiff's alleged denial of a kufi.

B.    *Claim Two – Eighth Amendment*

Defendants have construed the complaint to assert a claim pursuant to the Eighth Amendment, and plaintiff has responded to defendants' motion for summary judgment with arguments that the claim should not be dismissed.

To establish a violation of the Eighth Amendment, inmates "must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F .3d 464, 471 (4th Cir. 1999) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)) (internal quotation marks omitted). This inquiry is thus composed of both an objective prong and a subjective prong. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d at 471. The alleged deprivation must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Put differently, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). And, to satisfy the subjective prong, the movant must demonstrate that a prison official acted with deliberate indifference. To

do so, a prisoner-plaintiff must establish that each defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; [each defendant] must both [have been aware] of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [the defendant] must [have also drawn] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff was deprived of all of his belongings between the dates of November 25, 2017 and December 10, 2017. It is without dispute that these items included, *inter alia*, plaintiff's comb, toothbrush, and deodorant and may have included a Qur'an and books of explanation. However, the deprivation of plaintiff's hygiene supplies or religious items for this roughly two-week period, standing alone, does not rise to the level of an "objectively serious deprivation" in support of an Eighth Amendment violation. See, e.g., Johnson v. Fields, No. 2:14cv38, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); Williamson v. Anderson, No. Civ.A. 5:05-0859, 2006 WL 709209, at *13 (S.D.W. Va. Mar. 16, 2006) (finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment); DeBlasio v. Rock, No. 9:09-cv-1077, 2011 WL 4478515, at *19 (N.D.N.Y. Sept. 26, 2011) (finding no Eighth Amendment violation where inmate was deprived of Bible for twelve days).

To be sure, some conditions of confinement, in combination, may establish an Eighth Amendment violation, but, this is only true "when [the conditions] have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson, 501 U.S. at 304. "Nothing so amorphous as "overall conditions" can rise to

the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Id. at 305. The record does not demonstrate that plaintiff suffered any such deprivation.[7]

Based on the record, there is no evidentiary basis for an Eighth Amendment claim in this suit, and defendants are thus entitled to judgment in their favor with respect to this claim.

C.   *Claim Three – RLUIPA*

In Claim Three, plaintiff asserts that defendants violated RLUIPA by withholding his religious property between the dates of November 25, 2017 and December 10, 2017. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that" the burden is "in furtherance of a compelling governmental interest[] and [] is the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc-1(a). Defendants assert that, because inmates can obtain only injunctive or declaratory relief under RLUIPA, see Rendelman v. Rouse, 569 F.3d 182 (4th Cir. 2009), plaintiff's RLUIPA claim became moot when his property was returned to him in December 2017. See Dkt. No. 24, pp. 9-10. While the return of plaintiff's property mooted plaintiff's claim to the extent that plaintiff sought the return of these items through this suit, it is unclear if the return of plaintiff's property is the only injunctive relief plaintiff seeks or is the only injunctive relief available to him. In any case, plaintiff's transfer from Nottoway Correctional Center has mooted any claim for injunctive or declaratory relief against the named

---

[7] In any case, the record also fails to establish that defendants acted with deliberate indifference in depriving plaintiff of his belongings. The evidence before the Court simply does not show that Williams or McDaniels were aware of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" or that they drew the inference. See Farmer, 511 U.S. at 837. Consequently, there is no evidentiary basis for an Eighth Amendment claim in this action, and defendants are thus entitled to judgment in their favor with respect to this claim.

defendants in this litigation.  See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007);

Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer to different prison rendered moot

prisoner's claims for injunctive and declaratory relief with respect to time at original institution).

Thus, defendants are entitled to judgment in their favor with respect to Claim Three.

D.     *Claim Four – Fourteenth Amendment*

       In his complaint, plaintiff vaguely alleges that defendants' refusal to provide plaintiff his

"approved religious items" was an act taken "in violation of the … Fourteenth Amendment of

the United States Constitution . . . ." Dkt. No. 10.  Defendants assert that, despite its heading,

any such claim should be analyzed, and dismissed, under the First Amendment.  See Dkt. No.

24, pp. 10-11.  The Court agrees.

       To the extent plaintiff argues that defendants' withholding of his religious property

impinged on his ability to practice his religion, his claim is properly raised under the First

Amendment's freedom of religion clause.  See Albright v. Oliver, 510 U.S. 266, 273 (1994)

("Where a particular Amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more generalized

notion of substantive due process, must be the guide for analyzing these claims.").

       Plaintiff's response to defendants' motion for summary judgment, however, implies that

plaintiff believes his Fourteenth Amendment claim arose when, through the acts of defendants,

"Virginia Department of Corrections Operating Policy and Procedure was violated." Dkt. No.

27, p. 3.  However, the fact that prison officials have failed to follow their own policies or

procedures—here, defendants' failure to abide by VDOC O.P. 802.1—does not state a

constitutional claim.  See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cty.

of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more

procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). And to the extent that plaintiff believes VDOC O.P. 802.1 created an enforceable property interest in certain items of his property, he is also not entitled to relief. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981).

Here, the evidence indicates that an adequate post-deprivation remedy was available to plaintiff—viz., the VDOC's internal grievance procedure under which he could appeal the confiscation. See Dkt. No. 27-6; see also Kuzminski v. Taylor, No. 1:13cv69, 2013 WL 312374, at *3 (E.D. Va. Jan. 23, 2013) (finding that prisoner's use of prison grievance system constituted satisfactory post-deprivation remedy in context of due process claim). Moreover, plaintiff could have contested the confiscation of his property under the Virginia Tort Claims Act, another available post-deprivation remedy. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding the remedies available under the Virginia Tort Claims Act to be sufficient post-deprivation remedies); Ballance v. Young, 130 F.Supp.2d 762, 767 (W.D. Va. 2000).[8] Because defendants did not intentionally or negligently deprive plaintiff of his personal property in violation of his due process rights, plaintiff's Fourteenth Amendment due process claim must be dismissed.

E.    _Official Capacity Claims_

---

[8] Plaintiff also obliquely suggests that his ability to access the courts was thwarted for the period in which he was denied his property. Because plaintiff has failed to establish that he suffered any cognizable injury (such as a missed filing deadline), he is unable to demonstrate the viability of a First Amendment access to courts claim in this case. See Lewis v. Casey, 518 U.S. 343, 348 (1996). Therefore, this claim is dismissed.

Defendants next assert that any claims for monetary damages raised against them in their official capacities must be dismissed.  The Court agrees.

"States retain immunity from suits as 'a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . .'" Beverly v. Lawson, 2011 WL 586416, at *5 (E.D. Va. Feb. 9, 2011) (quoting Alden v. Maine, 527 U.S. 706, 713, (1999)).  "'[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.'"  Id. at *4 (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).

F.     *Qualified Immunity*

Defendants finally assert that, even if plaintiff's allegations were proven true and a constitutional violation did occur, they are entitled to qualified immunity because their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Dkt. No. 24, p. 12 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).  Because the precise bounds of defendants' actions have not yet been established in this action, the Court will reserve ruling on qualified immunity.  To the extent defendants wish to provide additional evidence, they may do so in a renewed motion for summary judgment.

## IV.  Conclusion

For the foregoing reasons, defendants' partial motion for summary judgment is granted in part and denied in part.  An appropriate Order will issue.

Entered this 26 day of August 2020.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

14