**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **Hubert Alan Jason, II,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **1:19cv274 (AJT/IDD)** |
| ) | |
| **Mr. Call, et al.,** ) | |
| **Defendants.** ) | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is defendants' renewed motion for summary judgment in this civil

action brought by Virginia inmate Hubert A. Jason, II, who is proceeding <u>pro se</u>. [Dkt. No. 39].

The Court previously granted summary judgment to defendants on all but the following claim,

which is the subject of the renewed motion: Plaintiff, a Sunni Muslim, claims that defendants

Lieutenant Williams and Officer McDaniels violated his First Amendment rights by withholding

religious property while he was in restrictive housing at Nottoway Correctional Center (NCC).

Plaintiff has received the notice required by Local Civil Rule 7(K) and <u>Roseboro v. Garrison</u>,

528 F.2d 309 (4th Cir. 1975) [Dkt. No. 41], and he has not filed a response in opposition.

Because the undisputed facts demonstrate that defendants did not violate Jason's First

Amendment right to exercise his religion freely, defendants' renewed motion will be granted.

**I. Background**

The facts set out below are limited to those relevant to the sole remaining claim and are

viewed in the light most favorable to plaintiff, the nonmoving party. <u>See</u> <u>Bennett v. Garner</u>, 913

F.3d 436, 438 (4th Cir. 2019). In the complaint Jason alleges that he was housed in general

detention from November 25, 2017 to December 10, 2017. He further alleges that, while housed

there, Lieutenant Williams and Officer McDaniels withheld religious items that he required to practice his Muslim faith.

During the initial summary judgment proceedings, the parties disputed what type of restrictive housing Jason was in during the relevant period and what religious property had been withheld. The Court concluded that the evidentiary record allowed for an inference that a Quran, books of explanation, a prayer rug, and prayer oil had been withheld. The Court further concluded that Jason's particular housing during the relevant period was a disputed fact that could not be resolved at summary judgment. Defendants put forth testimony from A. Walton, the property supervisor at NCC, who testified that Jason had been housed in disciplinary segregation [Walton Aff. ¶¶ 1, 6–7]. Jason offered conflicting evidence that he had been housed in general detention. [Pl. Br. Opposing Summ. J., Ex. 3]. In particular, Jason submitted an Institutional Classification Authority Hearing Notification Form—dated November 25, 2017, 4:12 PM— which states that he was placed in general detention that day because he did not clear the cellphone tower coming out of visitation and that he was scheduled to appear before the Institutional Classification Authority on November 27, 2017. [Id.]. That dispute of fact was material because, the Court found, inmates housed in disciplinary segregation are subject to more property restrictions, including religious property.

In the renewed motion for summary judgment, defendants argue, and support with additional evidence, that the dispute over Jason's housing status is not material.[1] Warden Call

---

[1] Notwithstanding this argument, defendants have provided new, uncontested evidence intended to clarify the dispute about Jason's housing status. First, A. Walton authored a supplemental affidavit in which he attests that he misstated in his original affidavit that Jason was placed in disciplinary segregation on November 25, 2017, and concedes that Jason was placed into general detention on that date. [Walton Supp. Aff. ¶ 3]. In addition, D. Call, the warden of NCC, attests by affidavit that two days later, on November 27, Jason was reassigned from general detention to segregation investigation status after an institutional classification hearing. [Call Aff. ¶¶ 1, 4].

2

attests by affidavit that, regardless of where Jason was housed, beginning on November 25, 2017, all of Jason's property had to be confiscated and searched because he had failed to "clear the cell tower," meaning that an x-ray machine could not determine whether Jason was carrying a cell phone. [Call Aff. ¶¶ 4–5]. Call avers that Jason's property was being searched and investigated until December 8, 2017, and then his property was returned to him. [Id. ¶ 6]. Jason has not put forth any evidence to dispute this. With defendants uncontested evidence in hand, the Court now concludes that Jason's housing status is immaterial because it is no longer relevant to the outcome of the suit. See Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (explaining what constitutes materiality).

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. Analysis

Defendants argue that the undisputed facts demonstrate that they did not violate Jason's First Amendment right to exercise his religion freely under the factors outlined in Turner v.

---

Attached to the warden's affidavit is the institutional classification hearing authority report, which documents the status change. [Call Aff. Enclosure A]. Also attached to the affidavit is another institutional classification authority hearing report, dated December 8, 2017, in which Jason's status is changed back to general population. [Id. Enclosure B]. Defendants' evidence does not conflict with plaintiff's evidence, which demonstrates only that he was placed in general detention on November 25, 2017, and does not state how long he remained in that status.

Safley, 482 U.S. 78 (1987). Under Turner, although prisons must "reasonably accommodate an inmate's exercise of sincerely held religious beliefs," even when a prison rule substantially burdens an inmate's ability to practice his religion, it is nevertheless valid if it is reasonably related to legitimate penological interests. Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019) (quoting Turner, 482 U.S. at 89). To determine whether a challenged prison rule is valid under the First Amendment, Turner instructs courts to assess the following four factors:

> (1) whether there is 'a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there are 'ready alternatives.'

Id. (quoting Turner, 482 U.S. at 89–91).

The undisputed facts demonstrate that the prison did not deprive Jason of his First Amendment right to exercise his religion freely. Concerning the first Turner factor, the Fourth Circuit has described the "suppression of contraband" as a "compelling governmental interest[]" in the prison setting. McRae v. Johnson, 261 F. App'x 554, 558 (4th Cir. 2008). The Court thus agrees with defendants that the rule requiring all of Jason's property, including religious items, to be confiscated and searched was reasonably related to the legitimate penological interest of ensuring that Jason had not obtained a contraband cell phone. Second, defendants have submitted an affidavit authored by T. Ford, a former unit manager at NCC, who attests that, in response to Jason's informal complaint seeking a Quran, he offered Jason a Quran from the institutional chaplain. [Ford Aff. ¶¶ 1, 4]. Ford avers that Jason declined the accommodation. [Id. ¶ 4]. The offer to provide Jason with a Quran thus weighs in defendants' favor with respect to the second Turner factor because "[e]ven if the alternative is not the 'best method from the inmate's point of view,'" the alternative offered "need not be ideal . . . only available." Minton v. Childers, 113 F.

4

Supp. 3d 796, 802 (D. Md. 2015) (quoting Wardell v. Duncan, 470 F.3d 954, 961 (10th Cir. 2006)). In fact, Ford's offer to provide Jones a Quran further weighs in defendants' favor for the third and fourth Turner factors, given that Jason does not dispute that he was offered—and refused—an accommodation and does not put forth evidence that he asked for, but was denied, other accommodations. In sum, the analysis of the Turner factors demonstrates that, as a matter of law, Jason did not suffer a violation of his First Amendment right to exercise his Muslim faith freely while placed in restrictive housing.[2]

Accordingly, it is hereby

ORDERED that defendants' renewed motion for summary judgment [Dkt. No. 39] be and is GRANTED; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the appellate court. Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of defendants, to send a copy of this Order to plaintiff and to counsel of record for defendants, and to close this civil action.

Entered this ___2nd___ day of ___June___ 2021.

Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge

---

[2] Because the Court concludes that defendants committed no constitutional violation, it need not address defendants' argument that they are entitled to qualified immunity. See Wilson v. Flynn, 429 F.3d 465, 467 (4th Cir. 2005).